IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

AMERICAN FAMILY LIFE ASSURANCE       *
COMPANY OF COLUMBUS,
                                     *
        Plaintiff,
                                     *        CASE NO. 4:08-CV-167 (CDL)
vs.
                                     *
INTERVOICE, INC.
                                     *
        Defendant.
                                     *

_____

O R D E R

This action arises from Defendant Intervoice, Inc.'s alleged refusal to defend Plaintiff American Family Life Assurance Company of Columbus ("AFLAC") against a "claim" of patent infringement. Presently pending before the Court is Defendant's Motion to Dismiss Removed Complaint (Doc. 4). For the following reasons, the Court denies Defendant's motion.[1]

FACTUAL BACKGROUND

In early February 2001, Plaintiff, an insurance provider headquartered in Columbus, Georgia, entered into negotiations regarding the potential sale by Defendant to Plaintiff of an automated, interactive voice response system (the "System"). Plaintiff alleges that during these negotiations, Defendant had knowledge of patents owned by Ronald A. Katz Technology Licensing, L.P. ("RAKTL") covering technology similar to that contained in the

_____

[1]Plaintiff filed a Motion for Hearing (Doc. 15). Because the Court finds that a hearing would not assist it in deciding the issues presented by Defendant's motion, the Court denies Plaintiff's Motion for Hearing.

System.   Plaintiff also alleges that Defendant knew that some of Defendant's customers had been accused of infringing RAKTL patents while using Defendant's products, which were substantially similar to the System Defendant was attempting to sell Plaintiff.   Plaintiff further alleges that Defendant failed to disclose this information to Plaintiff during the sales negotiations.

On or about February 27, 2001, Plaintiff and Defendant entered into a contract (the "Agreement") for the purchase of the System by Plaintiff.   The Agreement contained an addendum that permitted Plaintiff to make a copy of the software provided by Defendant for disaster recovery purposes.   The Agreement also contained a provision requiring Defendant to

> indemnify, hold harmless, and defend [Plaintiff] against any claim that any System or Software as provided by [Defendant] hereunder, exclusive of Software programs specifically developed pursuant to Functional Specifications for applications identified by [Plaintiff], infringes any United States . . . patent; provided that [Plaintiff] promptly notifies [Defendant] of any such claim after receiving service of process, provides all reasonable assistance to [Defendant] and allows [Defendant] to control any resulting litigation and/or settlement negotiations.

(Ex. A to Compl. ¶ 6 [hereinafter Agreement].)

Plaintiff maintained a relationship with Defendant over the next several years, contracting to purchase upgrades and to increase the capacity of the System.   Plaintiff alleges that throughout these negotiations, Defendant failed to disclose that RAKTL had made claims of patent infringement against Defendant's customers based on systems substantially similar to Plaintiff's System.

2

On October 12, 2006, RAKTL contacted Plaintiff via mail in an attempt to gauge Plaintiff's interest in purchasing a license for the RAKTL patents.  Plaintiff did not respond to RAKTL's first letter. Contending that Plaintiff's "conduct evidences willful infringement of the [RAKTL] portfolio," RAKTL contacted Plaintiff again on July 5, 2007 to inquire about Plaintiff's interest in licensing the RAKTL patents. (Ex. C to Compl.)   Plaintiff responded, seeking more information regarding how Plaintiff's operations implicated the RAKTL portfolio.  RAKTL replied on December 19, 2007, identifying specific RAKTL patents it believed Plaintiff was infringing.  By letter dated January 18, 2008, Plaintiff informed RAKTL that it wished to meet to further discuss RAKTL's contention that Plaintiff was infringing on its patents.  Plaintiff and RAKTL agreed to meet on March 25, 2008.

By letter dated March 14, 2008, Plaintiff notified Defendant of RAKTL's patent infringement allegations.  The stated purpose of the letter was "to advise you [Defendant] of the claim of [RATKL], to ask for your assistance in this matter, to offer you the opportunity to defend or settle this claim, and to offer you the opportunity to meet with [RAKTL] representatives." (Ex. G to Compl.)  By letter dated March 24, 2008, Defendant declined to participate in the meeting while also affirming its contractual obligation to indemnify, defend, and hold Plaintiff harmless against claims of patent infringement, as specified in the Agreement.  Following the March 25, 2008 meeting with RAKTL, Plaintiff again requested Defendant's assistance in

3

negotiating RAKTL's patent infringement claim; Plaintiff also forwarded a copy of the information RAKTL presented to Plaintiff during the March 25th meeting.  The information presented by RAKTL purports to demonstrate how the System infringes RAKTL patents. After reviewing this information, Defendant again declined to assist, contending that it failed to see where RAKTL had made a claim against one of its products, that it was unaware of such a claim ever being made against one of its products, and that the Agreement contained exclusions to any defense or indemnification obligations and damage limitation provisions that would appear to be applicable to any claim against one of its products.  (Ex. K to Compl.)

Plaintiff filed the presently pending action alleging claims for fraud and breach of contract.  In its fraud claim, Plaintiff alleges that although Defendant promised to defend, indemnify, and hold Plaintiff harmless from claims of patent infringement, Defendant never intended actually to do so.  Plaintiff's breach of contract claim is based upon Defendant's alleged failure to honor the Agreement's indemnity provision.  Defendant seeks dismissal of Plaintiff's complaint based upon lack of subject matter jurisdiction and for failure to state a claim.  For the following reasons, the Court denies Defendant's Motion to Dismiss.

DISCUSSION

## I.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Defendant contends that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff does not

4

presently have standing to sue.  Defendant argues that Plaintiff has suffered no injury caused by Defendant's alleged refusal to indemnify and defend because no "claim" has been made against Plaintiff for which a duty to defend or indemnify exists under the Agreement. Thus, Defendant maintains that the present dispute has not yet ripened into a claim that can be adjudicated in federal court.

Federal courts are limited to adjudicating actual "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  "This case-or-controversy doctrine fundamentally limits the power of federal courts in our system of government." *Ga. State Conference of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir. 1999).  The concept of "standing" is an important element of the case-or-controversy doctrine.  *See id.*  In order to establish standing to sue, "a plaintiff must first have suffered an 'injury in fact.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The injury must be an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite."  *Id.*  A plaintiff must next establish "a causal connection between the injury and the challenged action of the defendant which is not too attenuated."  *Id.*  Finally, "it must be likely rather than speculative that 'the injury will be redressed by a favorable decision.'"  *Id.* (quoting *Lujan*, 504 U.S. at 561).

In support of its argument that Plaintiff has not suffered the requisite injury in fact to establish standing to sue, Defendant contends that under the plain terms of the Agreement, its duty to

defend, indemnify, and hold Plaintiff harmless is not triggered until RAKTL actually files suit against Plaintiff.  Thus, because Plaintiff does not allege that RAKTL has filed suit against it, any alleged injury is merely abstract or hypothetical and has not yet ripened to support a cognizable cause of action.  In support of its position, Defendant points to the language of the Agreement, which provides that Plaintiff is required to notify Defendant of "any claim" of patent infringement after receiving "service of process" regarding "such claim."  (Agreement ¶ 6.)

Under Plaintiff's interpretation of the Agreement, a "claim" was made against it by RAKTL when RAKTL notified Plaintiff that Plaintiff was infringing upon RAKTL patents.  Consequently, Plaintiff responds that Defendant's contractual duty to defend, indemnify, and hold harmless was triggered when RAKTL informed Plaintiff of its belief that Plaintiff was infringing RAKTL patents.  Further, Plaintiff alleges that it has suffered a cognizable injury in fact because it "has been forced to expend its own resources investigating RAKTL's allegations and negotiating with RAKTL." (Compl. ¶ 36.) Plaintiff also argues that it "has incurred significant costs in connection with RAKTL's patent infringement claims and will incur additional costs related to investigating, defending against, and attempting to resolve RAKTL's patent infringement claims." (*Id.* ¶ 37.)

Whether Plaintiff's claims are presently ripe such that Plaintiff has standing to pursue them in this Court depends on

whether Defendant's contractual duty to defend, indemnify, and hold Plaintiff harmless was triggered.[2]   The resolution of this issue depends on the meaning of the term "claim" in the parties' Agreement. The Agreement contains a choice of law provision designating the governing law as that of the state of Texas.   (*See* Ex. A to Compl. ¶ 9(c).)   Georgia honors such provisions unless "application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state."   *Keener v. Convergys Corp.*, 342 F.3d 1264, 1267 (11th Cir. 2003) (internal quotation marks omitted).   The parties appear to agree that Texas law governs Plaintiff's breach of contract claim (Pl.'s Resp. 6), and they do not contend that Georgia's interests or policies would be contravened by an application of Texas law.   For these reasons, the Court will apply Texas law to Plaintiff's breach of contract claim.

In construing contracts, Texas courts' "primary concern is to ascertain the parties' intent as expressed in the language of the [contract]."   *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) (applying Texas law).   Undefined terms in a contract "are to be given their ordinary and generally accepted meaning unless the [contract] shows that the words were meant in a technical or different sense."   *Id.*   The Court is "required to give effect to all

---

[2]Plaintiff does not contend that RAKTL's "claim" has triggered Defendant's duty to indemnify. (Pl.'s Resp. to Def.'s Mot. to Dismiss 11 [hereinafter Pl.'s Resp.].)   Plaintiff does, however, contend that RAKTL's "claim" triggered Defendant's duties to defend and hold Plaintiff harmless.   *Id.*

contractual provisions so that none will be rendered meaningless."
*Id.* When a court can reasonably give meaning to an undefined term in
a contract in light of these principles, then the contract is
unambiguous and it should be enforced according to its terms. *See,
e.g., J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.
2003). A contract is ambiguous, however, if it "is reasonably
susceptible of more than one meaning." *Int'l Ins. Co.*, 426 F.3d at
291. Typically, whether a contract is ambiguous "is a question of
law for the court to decide by looking at the contract as a whole in
light of the circumstances present when the contract was entered."
*Id.* When the contract is ambiguous, then the parties' intent becomes
a fact issue. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229, 230-31
(finding ambiguity in contract provision and remanding case to
district court for evidentiary hearing regarding parties' intent).

Applying these rules of contract construction, the Court finds
that the Agreement is ambiguous with respect to the term "claim."
The Fifth Circuit, applying Texas law, has observed that "[s]tanding
alone, the term 'claim' is susceptible of more than one meaning."
*Int'l Ins. Co.*, 426 F.3d at 291.

> Lawyers commonly use "claim" as a noun in at least three
> different senses: (1) The aggregate of operative facts
> giving rise to a right enforceable by a court; (2) The
> assertion of an existing right, such as a right to payment
> or to an equitable remedy; (3) A demand for money,
> property, or a legal remedy. Lay persons also use "claim"
> as a noun having more than one meaning: (1) A demand for
> something due or believed to be due; (2) A right to
> something, such as a title to a debt, privilege, or thing
> in the possession of another; (3) An assertion open to
> challenge.

*Id.* (footnotes omitted); *see also Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir. 1995) ("Giving the term its ordinary meaning, a claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy."); *Black's Law Dictionary* 281-82 (9th ed. 2009) (defining "claim" as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for"). While some of these definitions appear to contemplate the filing of a lawsuit, others clearly do not.

Defendant argues that the term "claim" does not stand alone in the Agreement; instead, it is qualified by the requirement that Plaintiff promptly notify Defendant of "any claim . . . after receiving service of process." (Agreement ¶ 6.) Defendant contends that construing "claim" broadly to encompass RAKTL's communications with Plaintiff would render the phrase "after receiving service of process" meaningless. Defendant's position has some appeal, but defining the term "claim" to require the filing of a lawsuit also renders other words in the Agreement meaningless. As Plaintiff points out, pursuant to the Agreement, "when a claim of infringement is made, [Defendant] has the right to control any '***resulting*** litigation,' demonstrating that the parties contemplated a claim ripening into litigation. If 'claim' meant only 'lawsuit,' then litigation would exist the instant a claim was made and the word

9

'resulting' would be meaningless." (Pl.'s Resp. 9-10; *see also* *Black's Law Dictionary* 1017 (defining "litigation" as "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself").) The Agreement also permits Defendant to control settlement negotiations, and it is beyond reasonable dispute that settlements can occur absent the filing of a lawsuit; moreover, an indemnitee may be entitled to indemnification for entering into a reasonable, prudent, and good faith settlement if the indemnity agreement otherwise permits. *See, e.g., E.I. Du Pont De Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 810 (Tex. App. 2007). Thus, as Plaintiff notes, "it would make little sense for the parties to have intended to permit [Defendant] to control only those settlement negotiations that occurred after a lawsuit was filed despite [Defendant]'s being responsible for paying the settlement[.]" (Pl.'s Resp. 10.)

After examining the language of the Agreement and using standard rules of contract construction, the Court finds that it is left with two different, but reasonable, interpretations of the term "claim." Just as it may be reasonable to interpret a "claim" to arise only after a lawsuit has been filed, it is also reasonable to interpret "claim" to include an assertion of a legal right prior to the commencement of litigation. Therefore, the term "claim" is ambiguous. Determining its meaning to the parties in this case requires the ascertainment of the parties' intent. That determination is more appropriately resolved after discovery rather than through a pre-discovery motion to dismiss. Accordingly, the

10

Court finds that Plaintiff has sufficiently established standing to proceed with this litigation, and therefore, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied.[3]

## II.  Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Defendant also contends that Plaintiff's Complaint fails to state a claim upon which relief may be granted.  "[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).  In reviewing a motion to dismiss under Rule 12(b)(6), a court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).  "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint

---

[3]Defendant also contends that the present action is not yet ripe because it is predicated on Plaintiff's "subjective, unsubstantiated belief that RAKTL may sue [Plaintiff] for patent infringement at some unknown time in the future and that the future suit will implicate [Defendant's] products that may trigger indemnification responsibilities." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss 13.)  Plaintiff has alleged that Defendant owed it a contractual duty (which the Court has found cannot be negated as a matter of law at this stage), and that as a result of Defendant's breach of its duty (as well as Defendant's alleged fraud), Plaintiff sustained a direct injury, including costs associated with investigation of the RAKTL "claim."  Plaintiff's claims are ripe for adjudication.  *See, e.g., Warner Cable Commc'ns, Inc. v. City of Niceville*, 911 F.2d 634, 640 (11th Cir. 1990) ("For a claim to be ripe for decision in the federal courts, a plaintiff must generally show that "he has sustained or is immediately in danger of sustaining a direct injury" as a result of the allegedly unlawful conduct.") (internal quotation marks omitted).

must include sufficient factual allegations "to raise a right to relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claim or claims. *Id.* (internal quotation marks omitted). "It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the claim] plausible." *Id.* (internal quotation marks omitted). Given this standard, the Court finds that, taking Plaintiff's allegations as true, Plaintiff has stated a claim for both breach of contract and fraud.

A.  Breach of Contract

Defendant first asserts that Plaintiff has failed to state a claim for breach of contract because it has not sufficiently alleged that Defendant breached any provision of the Agreement.  Defendant maintains that the term "claim"—which triggers the duty to defend, indemnify, and hold harmless—is unambiguous as a matter of law and subject to only one reasonable interpretation: that a "claim" for purposes of the Agreement only arises after a lawsuit has been filed. As previously discussed, the Court finds that "claim" is ambiguous and cannot be construed without factually ascertaining the intent of the parties.  Given the ambiguity of the operative term "claim" and taking Plaintiff's allegations as true, Plaintiff's allegations are sufficient to state a claim for breach of contract.

Under Texas law, a plaintiff must allege four elements to sustain a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff;

(3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997).   Plaintiff alleged that it contracted to buy the System from Defendant, (Compl. ¶ 14); that it paid for the System, (*id.*); that Defendant failed to honor its contractual obligation to defend, indemnify, and hold Plaintiff harmless from what it contends were RAKTL's "claims" of patent infringement, (*id.* ¶¶ 33, 53); and that Plaintiff suffered damage as a result of this breach, (*id.* ¶¶ 36, 37, 54).   Thus, to the extent Defendant seeks to dismiss Plaintiff's breach of contract count for failure to state a claim, Defendant's motion is denied.[4]

---

[4]Defendant also contends that other provisions of the Agreement expressly negate Defendant's obligation to indemnify Plaintiff. Specifically, Defendant argues that "[b]oth the Agreement and the RAKTL Presentation conclusively demonstrate that RAKTL is contending that its patents are only implicated by an integrated system that includes components [Defendant] did not even offer for sale." (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss 5.)   Thus, Defendant argues, it is not liable to Plaintiff under the indemnity clause because the Agreement states that Defendant "shall have no obligation with respect to [a] claim of infringement based upon [Plaintiff's] . . . combination, operation or use with apparatus, data or computer programs not furnished by [Defendant]." (Agreement ¶ 6.)

Defendant failed to raise this argument in its initial motion to dismiss, instead waiting until its reply brief.   Thus, Plaintiff has had no chance to respond to it.   Arguments raised for the first time in a reply brief are typically waived; or, at the very least, the non-moving party is given a chance to respond to the argument. *See, e.g., Flamenbaum v. Orient Lines, Inc.*, No. 03-22549-CIV, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004) (declining to consider argument raised by defendant for first time in reply brief in support of motion to dismiss).   Even apart from this general principle, however, the Court would still find that dismissal of Plaintiff's claims on this ground is inappropriate at this stage in the litigation.   The terms of the Agreement provide only that Defendant shall not be required to indemnify claims of infringement based upon *Plaintiff's* integration with other hardware or software not provided by Defendant.   Plaintiff has averred that Defendant "installed the System for [Plaintiff's] use." (Compl. ¶ 17.)   The Court cannot "conclusively" discern from the Complaint and the attachments thereto

B.   Fraud[5]

Defendant asserts that Plaintiff's fraud allegations fail to state a claim upon which relief can be granted because (1) Plaintiff failed to plead facts sufficient to support its fraud claim and failed to plead such facts with the requisite specificity; (2) Plaintiff waived its fraud claim by failing to rescind the Agreement; and (3) the merger provision in the Agreement estops Plaintiff from bringing a fraud claim.  The Court addresses each contention in turn.

> 1.   *Failure to Plead Facts Sufficient to Support Fraud Claim*

Defendant first contends that Plaintiff's Complaint fails to state an actionable claim for fraud because the facts pled by Plaintiff are insufficient to state a claim for fraud and because they are not sufficiently specific under Federal Rule of Civil Procedure 9(b).  In Georgia, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams*, 258 Ga.

---

which components of the System were integrated by Defendant, and which were integrated by Plaintiff.  At this time, disposition of Plaintiff's claims on these grounds would be inappropriate.

[5]In its Complaint, Plaintiff titled its fraud claim as "Fraud in the Inducement." (Compl. 7.)  In its response to Defendant's motion, however, Plaintiff clarified the nature of its fraud claim.  (Pl.'s Resp. 14.) Plaintiff also contends that Georgia law governs its tort claim for fraud. (Pl.'s Resp. 6.) *See, e.g., Velten v. Regis B. Lippert, Intercat, Inc.*, 985 F.2d 1515, 1519, 1521 (11th Cir. 1993) (applying New Jersey law to breach of contract claim based on choice of laws provision but applying Georgia law to fraudulent inducement claim).)  Defendant apparently agrees, as it cites exclusively to Georgia law in its discussion of Plaintiff's fraud claim in its brief in support of its motion to dismiss.

806, 806, 375 S.E.2d 223, 224 (1989).  The Federal Rules of Civil Procedure provide that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  This rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).  Of course, Rule 9(b) "must not abrogate the concept of notice pleading." *Id.* (internal quotation marks omitted).  A proper balance between notice pleading and the specificity required by Rule 9(b) is struck when the complaint alleges

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Id.* (internal quotation marks omitted).

Plaintiff clarified in its response to Defendant's motion that its fraud claim is based upon Defendant allegedly entering into the Agreement with no intention of performing its obligations under the Agreement.  (Pl.'s Resp. 14.) *See Brock v. King*, 279 Ga. App. 335, 339, 629 S.E.2d 829, 834 (2006) ("Fraud does occur . . . when a party

15

enters into a contract with no present intention of performing his promises."). The Court finds that Plaintiff has sufficiently alleged each element of its fraud claim with the requisite particularity. Plaintiff alleges that Defendant made a false representation by affirmatively representing, in the Agreement, that it would defend, indemnify, and hold Plaintiff harmless against claims of patent infringement (Compl. ¶ 15), without an intention to actually perform this obligation (*id.* ¶¶ 41-42). Plaintiff also alleges facts which, if true, could be found by the factfinder to support Plaintiff's contention that Defendant had no intent to honor its obligation under the Agreement. (*Id.* ¶¶ 9, 11-13, 28, 30, 34.) Plaintiff further alleges that this promise was made with the intention to induce Plaintiff into purchasing the System (*id.* ¶ 12), and that Plaintiff relied on Defendant's promise to indemnify it against claims of patent infringement when it entered into the Agreement (*id.* ¶¶ 16, 43). Finally, Plaintiff alleges that it suffered damages as a result of Defendant's purported fraud. (*Id.* ¶ 45.) Plaintiff has sufficiently alleged each element of its fraud claim.[6]

─────────────────

[6]The Court also rejects Defendant's contention that Plaintiff's fraud claim should be dismissed to the extent that Plaintiff alleges that Defendant's failure to disclose any communications between RAKTL and Defendant's other customers was fraudulent. Defendant bases its argument on the fact that under Georgia law, parties "in an arms-length business or contractual relationship" are typically under "no obligation to disclose information which is equally available to both parties." *First Union Nat'l Bank of Ga. v. Gurley*, 208 Ga. App. 647, 649, 431 S.E.2d 379, 381 (1993) (internal quotation marks omitted). In addition, Defendant argues that even if it did have a duty to disclose the information Plaintiff alleges it concealed, the information was available in Defendant's Form 10Q, which was filed several weeks before the Agreement was signed. (Ex. B to Def.'s Mot. to Dismiss 36-37, Jan. 12, 2001.)

16

Connected to its contention that Plaintiff failed to allege sufficiently the elements of a fraud claim, Defendant also argues that Plaintiff has failed to comply with Rule 9(b)'s specificity requirement. The Court finds that Plaintiff has alleged its fraud claim with sufficient specificity to withstand Defendant's Rule 9(b) challenge. Plaintiff's fraud claim is based upon Defendant's alleged misrepresentation, in the Agreement, that it would defend, indemnify, and hold Plaintiff harmless against claims of patent infringement. (Pl.'s Resp. 14.) Defendant cannot reasonably complain that it is not on notice regarding (1) what statement was made; (2) in what document; (3) when the statement was made; (4) who made the statement; (5) the content of the statement; and (6) what defendant obtained as a result of the fraud. *See Ziemba*, 256 F.3d at 1202. Moreover, Plaintiff has alleged that the statement misled it by inducing it to enter into the Agreement. (Compl. ¶ 44.) Furthermore, Plaintiff has attached to the Complaint the Agreement and the letters it contends display Defendant's fraudulent intent. "[F]air notice is [p]erhaps the most basic consideration underlying Rule 9(b)," *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116

---

As confirmed by Plaintiff in its response, Plaintiff does not base its fraud claim directly on Defendant's concealment of information involving Defendant's other customers, but Plaintiff maintains that Defendant's failure to disclose that information is probative of Defendant's intent never to honor its obligations to Plaintiff under the Agreeement. Plaintiff also maintains that Defendant's "wrongful intent" is supported by its allegations of Defendant's continued "wrongful[] refus[al] to even acknowledge that the System is implicated by RAKTL's allegations against [Plaintiff]." (Compl. ¶ 34.) The Court finds that Plaintiff has sufficiently stated a claim for fraud that withstands Defendant's motion to dismiss.

F.3d 1364, 1381 (11th Cir. 1997) (internal quotation marks omitted),

and the Complaint and its attachments in this case are sufficient to

provide Defendant with fair notice of Plaintiff's fraud claim.   To

the extent Defendant seeks to dismiss Plaintiff's fraud claim for

failure to comply with Federal Rule of Civil Procedure 9(b),

Defendant's motion is denied.

> 2.   *Waiver of Fraud Claim & Effect of Merger Clause*

Defendant next contends that Plaintiff has waived its fraud

claim because it failed to rescind the Agreement and restore the

consideration to Defendant.   In a related argument, Defendant

contends that the presence of a merger clause in the Agreement

precludes Plaintiff's fraud claims.

> i.   AFFIRMANCE OR RESCISSION OF THE AGREEMENT

Plaintiff seeks rescission as a remedy for its fraud claim.

(Compl. ¶ 46 ("[Defendant's] fraud entitles [Plaintiff] to rescind

the Agreement and recoup the consideration paid to [Defendant].").)

Georgia law requires a plaintiff seeking rescission to do so

"promptly."   O.C.G.A. § 13-4-60.   Generally, an attempt to seek

rescission contemporaneously with the filing of a lawsuit is

insufficiently prompt under Georgia law.   *See, e.g., Nexus Servs.,*

*Inc. v. Manning Tronics, Inc.*, 201 Ga. App. 255, 255, 410 S.E.2d 810,

811 (1991) (holding that "the rule requiring one who seeks the

rescission of a contract on the ground of fraud to restore, or offer

to restore, the consideration received, *as a condition precedent to*

18

*bringing the action*, is settled in this State") (internal quotation marks omitted).

     In this case, Plaintiff did not seek rescission of the Agreement before filing this lawsuit.  However, the Court finds it significant that Plaintiff filed its action in state court only four days after it received notification from Defendant that Defendant had reviewed the RAKTL presentation and would not indemnify Plaintiff for any alleged loss based upon the claims in the presentation.  (*Compare* Compl. *with* Ex. 7 to Compl.)  Furthermore, although a critical aspect of rescission is the prompt tender of any benefits received under the contract, Georgia law recognizes an exception to the tender rule when tender would be inequitable or otherwise unreasonable.  *See, e.g., Vivid Invs., Inc. v. Best Western Inn-Forsyth, Ltd.*, 991 F.2d 690, 692 (11th Cir. 1993).  In this case, Plaintiff alleges that returning the System would cause their business to suffer significant hardship, since Plaintiff has "invested heavily" in the System over eight years and "the System has become integral to [Plaintiff's] business." (Pl.'s Resp. 17.)  Moreover, Plaintiff points out that the value Defendant places on the System at present is zero.  (Agreement ¶ 6 (depreciating value of System for purposes of refund on "straight-line five (5) year basis.").)  Under these circumstances, the Court is not persuaded that Plaintiff has failed to "promptly" rescind the Agreement as a matter of law.  *See Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303, 305, 609 S.E.2d 659, 663 (2005) (noting that "in most cases a jury question is presented on whether a buyer acted

promptly to rescind the contract"). It also appears that "[a]t the very least, [Plaintiff] has raised factual issues concerning whether requiring tender would be reasonable under the circumstances." *Vivid Invs., Inc.*, 991 F.2d at 692-93 (applying Georgia law and finding that factual issues remained regarding whether tender was required when plaintiff argued that tender would constitute an abandonment of its investment and because the property at issue was a security for debt owed by plaintiff to third parties). Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged rescission as the appropriate remedy in this case for purposes of withstanding Defendant's motion to dismiss. As discussed below, even if Plaintiff is deemed to have affirmed the Agreement, his fraud claim would still withstand Defendant's motion to dismiss.

ii.   EFFECT OF AFFIRMANCE

Defendant contends that Plaintiff's purported failure to rescind the Agreement means that Plaintiff has waived its right to assert a fraud claim. Defendant relies on Georgia cases which state that an allegedly defrauded plaintiff has two options to pursue its claim: a plaintiff "may affirm the contract and sue for breach of contract or rescind the contract and sue in tort for fraud." *See, e.g., Garcia v. Charles Evans BMW, Inc.*, 222 Ga. App. 121, 122, 473 S.E.2d 588, 589 (1996); *see also City Dodge, Inc. v. Gardner*, 232 Ga. 766, 768, 208 S.E.2d 794, 796 (1974) (noting Georgia law traditionally allows defrauded plaintiffs either to "affirm the contract and sue in contract for breach or . . . seek to rescind the contract and sue in

20

tort for alleged fraud and deceit."). While this may be an accurate statement of the law, it is incomplete. Other Georgia cases clearly recognize a third option for pursuing a fraud claim: affirming the contract and suing for damages resulting from the fraud. *Browning v. Stocks*, 265 Ga. App. 803, 806, 595 S.E.2d 642, 645 (2004) (en banc) (citing *Tuttle v. Stovall*, 134 Ga. 325, 67 S.E. 806 (1910)). Because "the right to affirm the contract and the right to sue for damages for the fraud coexist," merely affirming a sales contract does not automatically preclude a tort claim by a buyer who alleges that the sale was fraudulent. *Id.* (internal quotation marks omitted). Thus, even assuming Plaintiff affirmed the Agreement, it could still sue for damages incurred by Defendant's alleged fraud.[7]   Defendant's contention—that Plaintiff necessarily waived its tort claim by failing to promptly rescind the Agreement—is at odds with long-standing Georgia precedent.

Defendant's position also fails to acknowledge the "difference in the rules of law relating to a waiver of the right of the defrauded party to sue for damages for the fraud when the contract is

---

[7]The Court also notes that Georgia law permits "a buyer [to] plead and offer proof of a cause of action in both tort and contract, postponing the choice between damages and rescission until after a verdict is rendered." *Vivid Invs., Inc.*, 991 F.2d at 692; *see also Tankersley v. Barker*, 286 Ga. App. 788, 790-91, 651 S.E.2d 435, 438 (2007) (holding that a double recovery on tort and breach of contract claims was prohibited); *Long v. Marion*, 182 Ga. App. 361, 365, 355 S.E.2d 711, 716 (1987) (physical precedent only) (noting that a party "can pursue any number of inconsistent remedies prior to formulation and entry of judgment" and that a successful plaintiff could elect remedies in the case of an inconsistent verdict).

affirmed, and those relating to a waiver of the right to disaffirm the contract and rescind it[.]" *Tuttle*, 67 S.E. at 808.  The fact that Plaintiff arguably delayed in seeking rescission of the Agreement could be construed as a waiver of its right to seek rescission as a remedy, but such delay would have no effect on Plaintiff's right to sue for damages for the alleged fraud unless Plaintiff took some other action to waive its fraud claim.  *Id.* (noting that right to sue in fraud for damages is limited by fact "that the defrauded party, in order to preserve his right to sue for damages for the fraud, must do no act in affirming the contract, or otherwise, which waives the fraud.").  The pertinent question thus becomes whether the plaintiff performed any action that waived its right to assert fraud or whether the plaintiff would be estopped, by the terms of the contract or otherwise, from asserting a fraud claim.

### a.   Waiver

Obviously, Plaintiff's fraud claim could be subject to dismissal if Plaintiff waived it.  "The question as to whether the defrauded party has waived the fraud is one mainly of intent."  *Tuttle*, 67 S.E. at 808.  The allegedly defrauded party

> must stand towards the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it.  If he does so, he waives the fraud.

*Id.* (internal quotation marks omitted); *see also, e.g., Smith v. Gordon*, 266 Ga. App. 814, 816-17, 598 S.E.2d 92, 94 (2004) (finding

waiver of fraud claim when buyer of automobile dealership made payments on promissory note for two years). Defendant's only basis for waiver appears to be its assertion that Plaintiff failed to rescind the Agreement. This assertion, standing alone, is insufficient to establish that Plaintiff waived its right to sue for damages in fraud. *See Tuttle*, 67 S.E. at 808; *Browning*, 265 Ga. App. at 806, 595 S.E.2d at 645.

### b. Estoppel

Defendant also contends that even if Plaintiff has not waived its fraud claim, Plaintiff is estopped from asserting it because the Agreement contains a merger clause. (*See* Agreement ¶ 9(d).) An essential element of a claim for fraud is justifiable reliance by the plaintiff. *See, e.g., Crawford*, 258 Ga. at 806, 375 S.E.2d at 224. Under Georgia law, "'where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail.'" *Ekeledo v. Amporful*, 281 Ga. 817, 819, 642 S.E.2d 20, 22 (2007) (quoting *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 828, 586 S.E.2d 726, 729 (2003)). This is because a merger clause "operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." *Authentic Architectural Millworks*, 262 Ga. App. at 828, 586 S.E.2d at 729 (internal quotation marks omitted). "Thus, if the contract contains a merger clause, a party cannot argue they relied

23

[upon] representations other than those contained in the contract."
*Id.* (alteration in original) (internal quotation marks omitted).

In this case, however, Plaintiff has clearly alleged that
Defendant made material misrepresentations in the Agreement itself.
(Compl. ¶ 39 ("In the negotiations leading up to the execution of the
Agreement, and in paragraph 6 of the Agreement itself, [Defendant]
represented that it would indemnify, hold harmless and defend
[Plaintiff] against claims of patent infringement.").)   A merger
clause will not preclude a fraud claim when a plaintiff "relie[s]
upon misrepresentations in the contract itself[.]"   *Authentic
Architectural Millworks*, 262 Ga. App. at 828, 586 S.E.2d at 729; *see
also Brock v. King*, 279 Ga. App. 335, 340, 629 S.E.2d 829, 834
(2006); *Chhina Family P'ship v. S-K Group of Motels, Inc.*, 275 Ga.
App. 811, 813, 622 S.E.2d 40, 43 (2005).

Defendant argues that the aforementioned cases are inapplicable
because in each of those cases, the fraud was evident from the *face*
of the contract.   *See, e.g., Brock*, 279 Ga. App. at 340, 629 S.E.2d
at 834 (finding that plaintiff could not take advantage of the rule
that merger clause did not preclude claim for fraud in contract
itself when plaintiff "failed to show that any provision of the
contract was false on its face").   While this contention appears to
be largely accurate, the Court finds the distinction immaterial under
the facts of this case.   The existence of a merger defense usually
precludes fraudulent inducement claims because it estops a plaintiff
from asserting an essential element of that claim: justifiable

24

reliance on an extra-contractual misrepresentation. *See, e.g., Browning*, 265 Ga. App. at 806, 595 S.E.2d at 645. Here, the species of fraud alleged by Plaintiff is not fraudulent inducement; it is that Defendant made a promise it never intended to keep, and that promise was incorporated into the Agreement itself. Under these circumstances, the Court cannot find that the merger clause negates the element of justifiable reliance. *Cf. Browning*, 265 Ga. App. at 806, 595 S.E.2d at 645-46 (holding that merger clause cannot bar fraud claim where buyer affirms sales contract and claims fraud was seller's active or passive concealment of damage or defects in purchased property).

In sum, even if Plaintiff affirmed the Agreement, mere affirmance will not preclude it from bringing a fraud claim in the absence of some other waiver or estoppel. Defendant has not argued any other basis for waiver, and the existence of the merger clause in the Agreement does not preclude Plaintiff from bringing a fraud claim based on a misrepresentation in the Agreement itself. Accordingly, Defendant's Motion to Dismiss Plaintiff's fraud claim is denied.

CONCLUSION

For the foregoing reasons, the Court finds that dismissal at this stage of the litigation is not warranted. Defendant's Motion to Dismiss (Doc. 4) is denied.

The stay in this action is hereby lifted. Defendant shall file its answer to Plaintiff's complaint within 14 days of today's Order. The parties shall comply with the Court's previously issued Rule

16/26 Order and submit a jointly proposed scheduling discovery order within 14 days of the date that Defendant files its answer.

IT IS SO ORDERED, this 21st day of September, 2009.

                                        S/Clay D. Land
                                           CLAY D. LAND
                                        UNITED STATES DISTRICT JUDGE