# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, | : : : : |
| Plaintiff, | : Civil Action No. : 4:08-cv-167 (HL) |
| v. | : : |
| INTERVOICE, INC., | : : |
| Defendant. | : : |

## ORDER

Before the Court is a discovery dispute (Doc. 38). The Court construes the dispute as a motion to compel the production of documents filed by Plaintiff American Family Life Assurance Company of Columbus ("Aflac"). For the following reasons, Aflac's motion is granted.

## I. BACKGROUND

This breach of contract and fraud case was brought by Aflac against Defendant Intervoice, Inc. ("Intervoice"). In 2001, Aflac agreed to purchase an interactive voice response ("IVR") system from Intervoice. The purchase agreement contained a provision which required Intervoice to indemnify, hold harmless, and defend Aflac against any claim of patent infringement. (Compl. Ex. A ¶ 6).

Ronald A. Katz Technology Licensing, L.P. ("RAKTL") holds patents for IVR products. RAKTL communicated to Aflac that it believed Aflac's IVR system

infringed against RAKTL's patents. Pursuant to their agreement, Aflac asked Intervoice to defend, hold harmless, and indemnify Aflac against RAKTL's claims. In response to Aflac's request, Intervoice affirmed its contractual obligation to indemnify, hold harmless, and defend Aflac against claims of patent infringement. Intervoice, however, did not believe that this contractual obligation had been triggered by RAKTL's actions.

Aflac's complaint alleges that Intervoice's refusal to defend Aflac against RAKTL's patent infringement claims constituted a breach of the purchase agreement (Compl. ¶ 53). It also asserts that Intervoice committed fraud because it never intended to honor its promise to indemnify, hold harmless, and defend Aflac against claims of patent infringement (Compl. ¶¶ 42, 44). According to Aflac, the fraud induced Aflac to enter into the agreement (Compl. ¶ 44).

During discovery Intervoice produced documents provided by Intervoice to the Securities Exchange Commission ("SEC") for public filing. Intervoice also produced a letter it sent to one of its customers, Cal-Fed, and a letter Intervoice's legal counsel sent to Cal-Fed. Within the SEC filings was the following language:

> [Intervoice] has received opinions from its outside patent counsel that certain products and applications offered by [Intervoice] do not infringe certain claims of the RAKTL patents. [Intervoice] has also received opinions from its outside counsel that certain claims under the RAKTL patent portfolio are invalid. Furthermore, based on the reviews by outside counsel, [Intervoice] is not aware of any claims under the RAKTL portfolio that are infringed by

2

[Intervoice's] products.[1]

The Cal-Fed customer letters stated that "[Intervoice] has, in fact, received opinions from its outside counsel that certain claims under the [RAKTL] patent portfolio are invalid. Further, [Intervoice] has received opinions from its outside patent counsel that certain products and applications offered by [Intervoice] do not infringe certain claims of the [RAKTL] patents."[2]

Aflac contends that the opinions of outside counsel are discoverable because Intervoice disclosed the conclusion of the opinions to the public, via the SEC, and to Cal-Fed. In its privilege log, Intervoice identified six documents containing the opinions. The parties do not dispute that the opinions are protected by the attorney client privilege. The issue is whether Intervoice has waived the privilege, rendering the opinions discoverable.

The Court heard oral argument on the motion on July 20, 2010. Intervoice has filed six documents containing the opinions to the Court for *in camera* review. Having read the opinions and considered the arguments of the parties, the Court finds that the opinions are discoverable and orders Intervoice to produce the documents containing them.

---

[1] SEC form 10-K for the years 2000, 2001, and 2002, and SEC form 10-Q for 2001. The forms were presented to the Court during the hearing on the motion.

[2] The customer letters were presented to the Court during the hearing on the motion.

## II. ANALYSIS

### A. General Principles of Privilege Law

Rule 501 of the Federal Rules of Evidence provides that in diversity cases, issues concerning the attorney client privilege shall be determined in accordance with state law. Fed.R.Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or] person shall be determined in accordance with state law.") In this case, Georgia privilege law applies, but federal privilege law will be considered by the Court as persuasive authority.[3]

The attorney client privilege is intended to protect the attorney client relationship by protecting communications between clients and attorneys. McKesson HBOC, Inc. v. Adler, 562 S.E.2d 809, 813 (Ga. Ct. App. 2002). The privilege is not absolute; it may be waived. Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994). The privilege belongs to the client and it is the client that must waive the privilege. Waldrip v. Head, 532 S.E.2d 380, 386 (Ga. 2000). The party who defends a discovery request on the basis of privilege has the burden of establishing that the privilege has not been waived. In re Keepr of

---

[3] The Court applies Georgia law because the case was brought in a federal court in Georgia and because whether the attorney client privilege applies to the documents at issue is relevant to Aflac's fraud claim. In an earlier ruling, the Court found that Georgia law applies to Aflac's fraud claim. It will therefore apply Georgia privilege law to determine whether the documents at issue are discoverable. Also, it will refer to decisions of federal courts applying federal common law because decisions of federal courts are persuasive authority. McKesson, 562 S.E.2d at 81 n. 4.

4

Records, 348 F.3d 16, 22 (1st Cir. 2003).

There are many types of waiver; two are at issue in this case. First, a party may waive privilege is if "it injects into the case an issue that in fairness requires an examination of otherwise protected communications." Cox, 17 F.3d at 1422. The waiver is called the subject matter waiver. Id. As described by the Sixth Circuit Court of Appeals, a waiver occurs when "the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail." In re Lott, 424 F.3d 446, 453 (6th Cir. 2005). In other words, "[t]o waive the attorney client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case." Mohawk Indus., Inc. v. Interface, Inc., 2008 WL 5210386, * 8 (N.D. Ga. Sept. 29 2008) (citation omitted); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir.1994) (waiver occurs when the privilege holder "asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication."). The Court of Appeals for the Federal Circuit has explained that when the privilege is waived pursuant to the subject matter waiver, then the waiver extends "to all such communications regarding the same subject matter." In re EchoStar Commc'n Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006).

Second, a party may waive the privilege is if it voluntarily discloses the

5

privileged communication. Mohawk Indus., 2008 WL 5210386, at * 9; Bedford, Kirschner & Venker, P.C. v. Goodman, 399 S.E.2d 723, 724 (Ga. Ct. App. 1990). "[A]t the point where attorney-client communications are no longer confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege." In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig., 632 F. Supp. 2d 1370, 1380 (M.D. Ga. 2009) (citation omitted). If a significant portion of a confidential communication is disclosed, then the privilege is waived as to the whole communication. Nguyen v. Excel Corp., 197 F.3d 200, 208 (5th Cir. 1999). According to the Second Circuit, if there has been a disclosure of privileged material to a third party outside a judicial proceeding "letting the cat out of the bag, so to speak," then there is a waiver of the matters actually revealed. In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987).

Further, although this matter involves Georgia privilege law, Federal Rules of Evidence Rule 502 speaks to the two types of waiver. "The Rule provides that a voluntary disclosure . . . to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information . . . ." Fed. R. Evid. 502 Adv. Comm. Note., Expl. Note (Revised 11/28/2007).

**B. Whether Intervoice Waived the Attorney Client Privilege**

Aflac contends that Intervoice has waived the attorney client privilege because

6

Intervoice disclosed the conclusion of the opinions in public SEC forms and in its Cal-Fed letters. Aflac wishes to examine the opinions because they may contain relevant discovery material. The opinions may show whether Intervoice, at the time it entered into its agreement with Aflac, intended to perform its contractual obligation to defend, hold harmless, and indemnify Aflac against patent infringement claims.

Intervoice states the opinions are irrelevant because it has not relied upon the opinions as a defense to Aflac's claims. Further, it claims that the opinions are opinion work product, and under the work product doctrine, they are not discoverable even if there has been some disclosure of confidential information.

The Court finds that Intervoice has waived the attorney client privilege as to the opinions because it let the cat out of the bag by disclosing a portion of the privileged opinions to third parties. The disclosure was significant because the heart of the communication, the conclusion, was disclosed. The remainder of the opinions, the basis for the conclusion, are directly connected to the disclosure and therefore are now discoverable. "When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." In re Keeper, 348 F.3d at 22. Moreover, the legal opinions may lead to the discovery of relevant information, mainly whether Intervoice knew that its products were susceptible to patent violations. See Fed. R. Evid. R. 26(b)(1) (stating that the scope of discovery extends to relevant matter and matter that "appears reasonably calculated to lead to the discovery of admissible evidence.").

7

The first type of waiver, the subject matter waiver, is inapplicable. Intervoice has not placed the opinions into issue by referencing them during the course of this litigation. See Taylor v. Nix, 451 F. Supp. 2d 1351, 1354 (N.D. Ga. 2006) (finding that the subject matter waiver inapplicable because the defendant did not inject any issue by referencing the legal documents). To the Court's knowledge, neither has Intervoice placed into issue any defense that would require the Court in fairness to allow Aflac to review the privileged opinions or other privileged communications related to the opinions. Even so, the opinions are discoverable because Intervoice waived the privilege by disclosing the conclusion of the opinions to third parties.

Rule 502 also permits the disclosure of the opinions in their entirety. There is no indication that Intervoice did not intend to disclose the conclusion of the opinions to a government agency, the SEC. Since the disclosure was intentional, Rule 502 provides that the remainder of the opinions are discoverable. The Court is unaware of communications aside from the opinions that would require the Court to determine that they, in fairness, ought to be disclosed as part of a subject matter waiver.

The Court disagrees with Intervoice's assertion that the opinions are not discoverable because they are opinion work product. As explained by the Court of Appeals for the Federal Circuit, "documents that embody a communication between the attorney and client . . . such as a traditional opinion letter" constitute work product. In re EchoStar, 448 F.3d at 1302. These communications, however, are

waivable, for example, when a party places part of the communication in issue. Id. In contrast, documents that contain an attorney's mental impressions, but were not communicated to a client, are not subject to waiver. Id. (explaining that while a client may waive the immunity for work product contained in opinion letters communicated to the client, the "client does not waive his attorney's own analysis and debate over what advice will be given.").

Here, there is no question that the opinions were communicated by outside counsel to Intervoice. At the moment the opinions were communicated to Intervoice, they became subject to waiver. Intervoice waived the attorney client privilege as to the opinions because it disclosed the conclusion of the opinions to third parties, the SEC and Cal-Fed. As a result of Intervoice's actions, the remainder of the opinions are discoverable.

### III. CONCLUSION

For the explained reasons, Aflac's motion (Doc. 38) is granted. Intervoice is ordered to produce to Aflac the six opinions on or before August 6, 2010. If Intervoice believes that any portion of the opinions should be not be disclosed then Intervoice must file a motion to redact or for a protective order.

**SO ORDERED**, this the 28th day of July, 2010.

> *s/ Hugh Lawson*
> **HUGH LAWSON, SENIOR JUDGE**

lmc